**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**JAMIE L. A.,**[1]

Plaintiff,

v.

**MARTIN O'MALLEY**, Commissioner of the Social Security Administration,

Defendant.

Case No. 3:23-cv-01442-IM

**OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION**

Kevin Kerr, Kerr Robichaux & Carroll, PO Box 14490, Portland, OR 97293. Attorney for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin C. Danielson, Assistant United States Attorney, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Joseph John Langkamer, Emma O'Rourke-Friel, and Justin Lane Martin, Office of the General Counsel, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Attorneys for Defendant.

**IMMERGUT, District Judge**

Plaintiff Jamie L. A. seeks review under 42 U.S.C. §§ 405(g) and 1383(c) of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Furthermore, consistent with Plaintiff's briefing, this Court uses feminine pronouns to refer to Plaintiff.

her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act. Plaintiff specifically challenges the manner in which the Administrative Law Judge ("ALJ") below evaluated Plaintiff's history of substance use and the ALJ's decision to discount the medical opinions of psychological consultative examiners Kayleen Islam-Zwart, Ph.D. and Marc Fowler, Ph.D.

Because the Commissioner's decisions are supported by substantial evidence, this Court AFFIRMS the denial of Plaintiff's application.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039). "This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

If the evidence is "susceptible to more than one rational interpretation," the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation marks omitted) (quoting *Robbins v. Soc. Sec. Admin.*,

466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*.

## BACKGROUND

### A. Plaintiff's Application Process

Plaintiff was born on September 6, 1979. AR 51. Plaintiff filed an application for DIB and SSI on July 1, 2020, alleging disability since January 1, 2019, when she was thirty-nine years old. AR 735, 745. Plaintiff's application was denied on October 20, 2020. AR 109. Plaintiff then sought reconsideration, and her application was denied again on September 29, 2021. AR 121, 126.

Plaintiff requested a hearing, and she appeared with counsel at an administrative hearing on June 28, 2022 before ALJ Laura Valente. AR 28, 128. On July 13, 2022, the ALJ issued a decision finding that Plaintiff had "not been under a disability within the meaning of the Social Security Act from January 1, 2019, through" the date of the decision. AR 736, 747. Then, on August 1, 2023, the Appeals Council denied Plaintiff's request for the Council to review the ALJ's decision, and accordingly, the ALJ's decision became "the final decision of the Commissioner of Social Security." AR 726. On October 4, 2024, Plaintiff filed the instant suit, seeking review of the Commissioner's final decision. ECF 1.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. *See* 20 C.F.R. §§ 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step"), 416.920(a)(4) (same). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant and productive mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, then

the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot make an adjustment to perform such work, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 146, n.5. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1098, 1100. Thus, at step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

At step one of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2019. AR 738. At step two, the ALJ

found that Plaintiff had two "severe impairments": lumbar degenerative disc disease and depressive disorder. AR 738. At step three, the ALJ found that Plaintiff's severe impairments did not "meet[] or medically equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." AR 738 (citation omitted). With respect to Plaintiff's depressive disorder, the ALJ determined that Plaintiff had a "moderate limitation" in her "understanding, remembering, or applying information"; "[i]nteracting with others"; "concentrating, persisting, or maintaining pace"; and "adapting or managing oneself." AR 739. At step four of the sequential analysis, the ALJ found that Plaintiff had the RFC "to perform light work" with additional limitations, but that she was "unable to perform any past relevant work." AR 740, 745. At the final step, the ALJ found that Plaintiff could "perform the requirements of representative occupations such as housekeeping cleaner," "cafeteria attendant," and "photocopy machine operator." AR 746. Based on this sequence, the ALJ concluded that Plaintiff was not disabled between January 1, 2019 and July 13, 2022. AR 747.

**DISCUSSION**

Plaintiff mounts two challenges to the ALJ's decision below. First, she contends that the ALJ improperly discounted the opinions of two psychological consultative examiners, Dr. Marc Fowler, Ph.D. and Dr. Kayleen Islam-Zwart, Ph.D. Plaintiff's Opening Brief ("Pl. Br."), ECF 13 at 4, 6, 8. Second, she contends that the ALJ erred in failing to find that Plaintiff's substance use was severe and to apply a formal Drug Addiction and Alcoholism ("DAA") analysis. *Id.* at 4.

For the reasons below, neither contention is persuasive under the requisite standard of review. Accordingly, the ALJ's denial of Plaintiff's application must be affirmed. Plaintiff's arguments are addressed in reverse order.

**A. The ALJ Properly Considered Plaintiff's Substance Use and No DAA Analysis Was Necessary**

The ALJ explicitly found that Plaintiff's depressive disorder was "severe" at step two of the sequential analysis. Nonetheless, Plaintiff argues that the ALJ should have found Plaintiff's substance use to be severe "and that Plaintiff's limitations were worsened by this impairment." Pl. Br., ECF 13 at 11.

Throughout her opinion, however, the ALJ discussed and referenced Plaintiff's alcohol and drug use. AR 742–744; *see Wendt v. Kijakazi*, No. 23-35069, 2023 WL 8542737, at *2 (9th Cir. Dec. 11, 2023) (explaining that courts must "look to *all* the pages of the ALJ's decision" (brackets omitted) (quoting *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022))). And even after considering this evidence in tandem with Plaintiff's medical history, the ALJ still found that Plaintiff's depression was severe, though not to the point of disability. This analysis was supported by substantial evidence and merits this Court's deference and affirmance.

The ALJ expressly found that "the record shows the claimant's mental health as stable despite intermittent drug and alcohol use." AR 742. In considering Plaintiff's mental status exams, the ALJ noted Plaintiff's substance use and when, at different appointments, Plaintiff had reported: "us[ing] methamphetamine about one month prior," "1.5 months sobriety from methamphetamine," "drinking 1/5th of Vodka nightly," and "consum[ing] alcohol and cannabis on a daily basis." AR 742–43. Further, in evaluating the various experts in this case, the ALJ discounted experts who (in the ALJ's view) failed to properly weigh Plaintiff's substance use in their diagnoses. AR 744–45. And conversely, the ALJ favored experts who did weigh that substance use in their diagnoses. AR 745. That is sufficient under substantial evidence review.

To the extent Plaintiff is arguing that the ALJ was required to treat Plaintiff's substance use as a malady separate from her depressive disorder and lumbar issues, Plaintiff cites no legal

authority requiring the ALJ to do so. *See* Pl. Br., ECF 13. Rather, under the deferential substantial evidence standard, the ALJ's course of action here was justified by the record: as explained, she considered any substance use as part of Plaintiff's depressive disorder and ultimately determined that disorder to be severe, though not disabling. This was a rational reading of the record, and this Court cannot substitute its own judgment for the ALJ's at Plaintiff's request. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (courts cannot "engage in second-guessing" the ALJ's evaluation of evidence). And in any event, because the ALJ did find that Plaintiff had two severe impairments and thus decided step two in his favor, Plaintiff could not have been prejudiced by the ALJ's decision to consider Plaintiff's substance use as part of the depressive disorder analysis. *See Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) (explaining that because "step two was decided in [the plaintiff's] favor . . . [,] [h]e could not possibly have been prejudiced").

Plaintiff's argument that the ALJ should have conducted a DAA analysis fares no better. Per the Social Security Administration's ("SSA") regulations and the Social Security Act, a DAA analysis is only required when the ALJ finds that an applicant is disabled and that there is medical evidence of substance use. *See* 20 C.F.R. §§ 404.1535(a), 416.935(a) (both regulations stating, "*If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability . . . ." (emphasis added)); *see also Bustamante v. Massanari*, 262 F.3d 949, 954–55 (9th Cir. 2001); *Parra v. Astrue*, 481 F.3d 742, 747–50 (9th Cir. 2007). Here, even after the ALJ considered Plaintiff's substance use, the ALJ found that Plaintiff was *not* disabled. Therefore, no additional DAA analysis—in addition to what the ALJ already evaluated—was necessary in this case to determine how much Plaintiff's substance use

contributed to her diagnoses. Moreover, Plaintiff's argument is unpersuasive because it is self-defeating: a DAA analysis would have further *weakened* Plaintiff's application because it would have required the ALJ to remove any consideration of Plaintiff's substance use from the analysis. *See Bustamante*, 262 F.3d at 955.

Ultimately, Plaintiff's arguments boil down to disagreement with the fact that the ALJ did not find Plaintiff's substance use to be as debilitating as Plaintiff believes it to be. But Plaintiff cannot deny that the ALJ did consider such substance use and that the ALJ's conclusions are rooted in the factual record. Therefore, as the Commissioner rightly puts it: "Because the ALJ ultimately decided step two in Plaintiff's favor and then considered *all* her symptoms throughout the remaining analysis—including any limitations stemming from her substance use—Plaintiff's argument is inconsequential." Resp., ECF 16 at 6.

**B. Substantial Evidence Supports the ALJ's Decision to Discount Dr. Islam-Zwart's and Dr. Fowler's Medical Opinions**

The SSA has promulgated regulations for evaluating the persuasiveness of medical opinions. Under those regulations, the "most important factors" for evaluating "the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. §§ 416.920c(a), 404.1520c(a); *see Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (holding that § 404.1520c supersedes prior Ninth Circuit precedent). "Supportability" means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 416.920c(c)(1), 404.1520c(c)(1). "Consistency" means "[t]he more consistent a medical opinion(s) . . . is with evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 416.920c(c)(2), 404.1520c(c)(2).

Applying these factors, the ALJ permissibly discounted the medical opinions of Dr. Islam-Zwart and Dr. Fowler. Each physician is addressed in turn.

**1. Dr. Islam-Zwart**

Dr. Islam-Zwart evaluated Plaintiff in February 2020. AR 337. She concluded that Plaintiff had "marked" mental impairments, with "moderate" to "marked" issues with her ability to: understand instructions; perform activities within a schedule; learn new tasks; perform routine tasks; adapt to changes in a work setting; make simple work-related decisions; be aware of normal hazards and take precautions; ask simple questions or request assistance; communicate and perform effectively in a work setting; maintain appropriate behavior; complete a normal work day and work week without interruptions from psychologically based symptoms; and set realistic goals and plan independently. AR 674–75.

The ALJ found this opinion to be "unpersuasive" for several reasons. First, the ALJ found that Dr. Islam-Zwart's opinion was "unsupported by [a] corresponding mental status exam, which was primarily within normal limits." AR 744. Second, the ALJ found the opinion "inconsistent with [Plaintiff's] relatively unremarkable mental status exams throughout the relevant period." *Id.* And the ALJ found the opinion "also inconsistent with [Plaintiff's] ongoing substance use and lack of mental health treatment." *Id.*

Substantial evidence supports each of these conclusions. Dr. Islam-Zwart's evaluation of Plaintiff showed that Plaintiff displayed behaviors that could reasonably be described as "primarily within normal limits." She could make eye contact "within normal limits"; "was adequately dressed and groomed"; had an "adequate" vocabulary; "was able to respond to interview questions as necessary"; displayed "no indication of delusional thought processes"; "appeared to put forth adequate effort during the evaluation"; and was able to complete cognitive tests, though with some level of impairment. AR 679–80. As Plaintiff points out, there is some

countervailing evidence, such as some of Plaintiff's test scores, Pl. Br., ECF 13 at 9, but these scores alone do not mean that the ALJ's conclusions lacked substantial evidence. *See Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled.").

Furthermore, as the ALJ catalogued, the record contains evidence of more neutral mental status exams throughout the relevant period. For instance, in May 2020, Plaintiff "report[ed] significant benefit from" medication and that "she ha[d] been doing fantastic over the last 2 weeks" before the appointment. AR 376, *cited in* AR 743. Her scores on various tests did not show signs of severe symptoms. AR 376–77, *cited in* AR 743. In June 2020, during what the ALJ called "subsequent mental status exams," AR 743, Plaintiff again did not show any signs of severe symptoms and only reported "[f]eelings of depression some days of the week." AR 372–73. During a December 2020 appointment, Plaintiff was reported to be properly oriented, in a "normal range" of affect, "mood congruent," properly dressed, and "goal oriented" and "logical." AR 605, *cited in* AR 743.

Finally, there is also evidence in the record supporting the ALJ's conclusion that Dr. Islam-Zwart did not properly evaluate Plaintiff's substance use. Dr. Islam-Zwart noted that Plaintiff's alcohol and amphetamine use was "[i]n [p]artial [r]emission" and that her hallucinogen use was also "[i]n [r]emission." AR 357. But the ALJ noted that throughout the relevant period, Plaintiff used alcohol and various drugs and was not "in remission," which at least partially undermines Dr. Islam-Zwart's statements. *See* AR 742–43.

At best for Plaintiff, the evidence is ambiguous as to whether the ALJ properly discounted Dr. Islam-Zwart's evaluation. Yet "[w]here evidence is susceptible to more than one

rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630 (citation and internal quotation marks omitted). That rule controls here.

**2. Dr. Fowler**

Dr. Fowler met Plaintiff for a mental evaluation on August 22, 2021. AR 648. Dr. Fowler concluded that Plaintiff's "little desire for social interaction" would be "likely to significantly impact her ability to successfully interact with co-workers." AR 651. Dr. Fowler also concluded that due to Plaintiff's "medical condition," her "regular attendance in a workplace" would be "questionable." *Id.* Finally, Dr. Fowler concluded that Plaintiff would be "unlikely" to "successfully adapt to typical workplace stresses" in view of her "preference for isolation." *Id.*

The ALJ found Dr. Fowler's opinion to be unpersuasive for several reasons. First, Dr. Fowler, in the ALJ's view, failed to "fully address" Plaintiff's alcohol and cannabis use. AR 744. Second, the ALJ found that Dr. Fowler's opinion concerning Plaintiff's alleged "significant deficits in social functioning" was "inconsistent with [Plaintiff's] interaction with providers, use of public transportation as well as her ability to shop in stores." *Id.* Third, the ALJ found that Dr. Fowler's opinion concerning Plaintiff's attendance was "not supported by [Plaintiff's] work history." AR 744–45.

Substantial evidence supports these conclusions. As to Plaintiff's substance use, although Dr. Fowler noted that Plaintiff "consumes alcohol and cannabis on a daily basis," AR 649, Dr. Fowler nowhere discussed how that substance use figured into his ultimate assessment of Plaintiff. *See generally* AR 647–51. It therefore would have been difficult for the ALJ to determine whether Dr. Fowler's opinion was based solely on Plaintiff's depression or also influenced by Plaintiff's substance use, thus reducing the reliability and supportability of Dr. Fowler's opinion.

Additionally, the ALJ did not err in finding Dr. Fowler's opinion inconsistent with other record evidence. *See Stiffler v. O'Malley*, 102 F.4th 1102, 1107 (9th Cir. 2024). The ALJ catalogued various instances (none of which Plaintiff disputes) during which she ably interacted with others and demonstrated an ability to perform tasks—all of which reasonably undercuts Dr. Fowler's severe assessment of Plaintiff's ailment. AR 739. Furthermore, Plaintiff's work history shows that Plaintiff is capable of consistent attendance: Plaintiff was made a shift lead at Subway, and she left the position of her own volition. AR 741; *see also* AR 35–36. Plaintiff also made clear in her testimony to the ALJ that she was not working because she "can't *physically* do it" due to her "back and . . . knees." AR 37–38 (emphasis added).

At core, Plaintiff's briefing draws different inferences from the same evidence the ALJ considered. *See* Pl. Br., ECF 13 at 6–8. However, "[i]f the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (internal quotation marks omitted). That rule compels affirmance of the ALJ's decision, which the Commissioner has adopted as his own.

**CONCLUSION**

This Court AFFIRMS the Commissioner's decision denying Plaintiff's SSI and DIB application.

**IT IS SO ORDERED**.

DATED this 6th day of August, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge